IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 35594-2-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| GARRETT GUY KIM, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, J. — Garrett Kim appeals his convictions for two counts of second

degree identity theft. We affirm his convictions, but remand with instructions to strike

$831.13 in court costs.

## FACTS

On March 20, 2016, Alexa Proctor's debit card went missing after it was used at

an O'Reilly Auto Parts store. Ms. Proctor did not notice the card was missing until the

following day, at which point she went to her bank to obtain a replacement card. On

March 22, Ms. Proctor noticed there were two unauthorized transactions on her card,

both occurring around noon on March 21. One transaction took place at Baxter's Auto Parts and the other at Farmer's Exchange.

Surveillance footage from Farmer's Exchange enabled law enforcement to pull some still photos of a suspect. The images depicted a white male wearing sunglasses and distinctive clothing.

Armed with still images, law enforcement talked to employees from Baxter's Auto Parts, Farmer's Exchange, and O'Reilly Auto Parts. Information obtained from the employees helped law enforcement identify Garrett Kim as the suspect in the surveillance footage. A subsequent search of Mr. Kim's home uncovered clothing similar to the items worn by the suspect in the surveillance footage. However, law enforcement were not able to recover Ms. Proctor's debit card.

Mr. Kim was charged with two counts of second degree identity theft. Count 1 pertained to the transaction at Baxter's Auto Parts. Count 2 pertained to the transaction at Farmer's Exchange. Mr. Kim exercised his right to a jury trial. At trial, he and other defense witnesses testified that Mr. Kim was not involved in the theft or use of Ms. Proctor's debit card. Instead, Mr. Kim claimed he spent the dates of March 20 and 21 working at home.

Mr. Kim's jury was provided nine separate instructions. Instructions 7 and 8 were the to-convict instructions for the two identity theft charges. The wording of instructions

7 and 8 was identical, save two details: Instruction 7 stated it pertained to count 1 and the Baxter's Auto Parts transaction. Instruction 8 stated it pertained to count 2 and the Farmer's Exchange transaction. Instruction 9 provided the jury with instructions on deliberations and for reaching a verdict. It advised the jury that "[b]ecause this is a criminal case, each of you must agree for you to return a verdict." Clerk's Papers (CP) at 52. The trial court did not provide the jury with an instruction based on WPIC 3.01[1] ("Multiple Counts—Single Defendant"), which would have advised the jury that it must decide each count separately. However, the jury was provided separate verdict forms for count 1 and count 2. Mr. Kim did not object to the court's instructions.

During deliberations, the jury asked the trial court "whether all the evidence admitted can be used to consider both (each) counts (individually)?" CP at 56. As approved by both Mr. Kim and the State, the trial court answered the jury's question with, "[y]ou must rely on the instructions regarding the evidence previously given, no further instruction may be given." *Id*.

The jury entered guilty verdicts on both count 1 and count 2 and the trial court sentenced Mr. Kim to 13 months' incarceration and assessed $1,331.13 in legal financial

---

[1] WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 3.01, at 88 (4th ed. 2016) (WPIC).

3

obligations (LFOs). Specifically, the trial court imposed a $500 crime victim penalty

assessment and $831.13 in court costs.

Mr. Kim appeals his judgment and sentence.

ANALYSIS

*Identity theft convictions*

Mr. Kim argues that because the jury was not instructed that each count must

be considered separate from the other, he was deprived of his constitutional rights to

unanimous verdicts and to be free from double jeopardy. According to Mr. Kim, the

jury's question indicates confusion over whether the same conduct could be used to

justify convictions for both counts 1 and 2.

Mr. Kim's constitutional challenges to his convictions are claims that may be

raised for the first time on appeal. RAP 2.5(a). "Our review is de novo." *State v. Mutch*,

171 Wn.2d 646, 661-62, 254 P.3d 803 (2011).

Contrary to Mr. Kim's position, this is not a multiple acts case where a *Petrich*

instruction would be necessary to avoid jury unanimity problems. *State v. Petrich*,

101 Wn.2d 566, 683 P.2d 173 (1984), *overruled on other grounds by State v. Kitchen*,

110 Wn.2d 403, 406 n.1, 756 P.2d 105 (1988). A *Petrich* instruction is appropriate when

the defendant has been charged with one count of criminal conduct, but the evidence

indicates the commission of several distinct criminal acts. In such circumstances, a

4

unanimity instruction is generally necessary in order to ensure that all 12 jurors agree as to which act justifies the offense of conviction. Had Mr. Kim been charged with only one count of identity theft, a *Petrich* instruction would have been warranted. But because Mr. Kim was charged with two counts, and the evidence only indicated two criminal acts, there was no need for a *Petrich* instruction to ensure jury unanimity.

Mr. Kim also complains that because the jury was not provided an instruction akin to WPIC 3.01 ("Multiple Counts—Single Defendant"), there is a danger he may have been convicted twice of the same conduct, in violation of double jeopardy.[2] We find no cause for concern. Although it would have been preferable for the trial court to issue an instruction pursuant to WPIC 3.01, the court's instructions clearly identified count 1 and count 2 as involving different transactions (or stores) and therefore distinct criminal acts.

The jury's question does not indicate that it may have convicted Mr. Kim twice based on the same criminal conduct. There was never any question that the transactions at Baxter's Auto Parts and Farmer's Exchange involved the same person. It was therefore appropriate for the jury to assess the evidence pertaining to both transactions in order to discern whether Mr. Kim was the individual involved. By reviewing the totality of the evidence, the jury did not run the risk of twice convicting Mr. Kim for the same conduct.

---

[2] U.S. CONST. amend. V; WASH. CONST. art I, § 9.

The court's clearly written instructions prevented this possibility.

*LFOs*

Citing recent statutory changes to Washington's LFO scheme,[3] Mr. Kim

challenges the trial court's imposition of (1) $831.13 in court costs ($200.00

criminal filing fee, $60.00 sheriff's service fee, $400.00 in jury demand fees, and

$171.13 in witness cost) and (2) a $500.00 crime victim penalty assessment. Our

Supreme Court has held that the 2018 LFO amendments apply prospectively to cases

on direct appellate review at the time of enactment. *State v. Ramirez*, 191 Wn.2d 732,

747, 426 P.3d 714 (2018). Among other things, the LFO amendments prohibit

imposition of court costs on defendants who are "indigent," as that term is defined by

RCW 10.101.010(3)(a)-(c), at the time of sentencing. RCW 10.01.160(3).

The State concedes Mr. Kim's LFO assignments of error and requests we remand

this matter to strike all $1,331.13 in LFOs from Mr. Kim's judgment and sentence.

We accept the State's concession with respect to imposition of the $831.13 in court

costs. The 2018 LFO amendments prohibit imposition of these costs against indigent

defendants. RCW 10.01.160(3); *see also* RCW 36.18.020(2)(h), RCW 36.18.040,

RCW 10.46.190, RCW 10.64.015.

---

[3] LAWS OF 2018, ch. 269.

No. 35594-2-III
*State v. Kim*

We do not accept the State's concession with respect to the crime victim penalty

assessment. The penalty assessment is not a cost of prosecution under RCW 10.01.160.

It is instead governed by RCW 7.68.035. "An offender being indigent . . . is not grounds

for failing to impose . . . the crime victim penalty assessment under RCW 7.68.035."

RCW 9.94A.760(1). The 2018 LFO amendments did not change the mandatory nature of

this assessment. *See* RCW 7.68.035; LAWS OF 2018, ch. 269 § 19. Neither the LFO

statutory amendments nor *Ramirez* provides a basis for striking the penalty assessment.

## CONCLUSION

Mr. Kim's convictions are affirmed, but we remand to strike the aforementioned

$831.13 in court costs from the judgment and sentence.

A majority of the panel has determined this opinion will not be printed in

the Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Pennell, J.

WE CONCUR:

_____     _____
Lawrence-Berrey, C.J.                Fearing, J.